Neal K. Carter (AZ#034200)
NEAL K. CARTER, ESQ
P.O. Box 245
Queen Creek, AZ 85142
(480) 628-1037
neal@nealkcarteresq.com

Neal Cornett (DC# 1660201)*
THE OVERSIGHT PROJECT
2033 K. Street NW, Ste 250
Washington, DC 20006
(606) 275-0978
neal@itsyourgov.org

*Admitted pro hac vice

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen Winn, Chairwoman of the Pima County Republican Party, and the Pima County Republican Party | ) ) ) Case No.: CV-2603108-PHX-MTL |
| | ) **DECLARATION OF DAVE SMITH ON** |
| Plaintiffs, | ) **BEHALF OF THE PIMA COUNTY** ) **REPUBLICAN PARTY** ) |
| vs. | ) ) |
| Adrian Fontes, in his official capacity as Arizona Secretary of State; Kris Mayes, in her official capacity as Arizona Attorney General | ) ) ) ) |
| | ) |
| Defendants. | ) ) ) |
| | ) |

I, Dave Smith, declare as follows:

1.      I am a former Arizona DPS Lieutenant and have been a law enforcement professional since 1975. I have worked a broad range of assignments, developed nationwide training, written hundreds of articles been certified as an expert witness in both Arizona and Nova Scotia and helped create the video training concepts for law enforcement and I am authorized to make these statements on behalf of the Plaintiff.

2.      I am competent to testify as to the matters contained herein and make this declaration based on my personal knowledge.

3.      I am an active member of the law enforcement community and regularly speak with law enforcement professionals throughout the United States.

4.      Uniformed law enforcement officers frequently vote in uniform on their way to and from their shifts.

5.      The 2025 Arizona Elections Procedures Manual describes "[i]mpersonating a law enforcement officer or *otherwise wearing* clothing, uniforms or official-looking apparel intended to deter, intimidate, or harass voters" (emphasis added) as "conduct that, depending on context, may be considered intimidating conduct inside or near the polling place[.]" Ariz. Sec'y of State, 2025 Elections Procedures Manual, Ch. 9, § III.D, EPM pages 204–05.

6.      The Elections Procedures Manual's decision to include wearing uniforms as intimidating conduct could lead to the removal of police officers from voting locations.

7.      Election officials are given great discretion to determine what clothing might be intended to intimidate, deter, or harass a voter.

8.       I believe that this discretion would or has a high probability of being purposely abused or inadvertently misused to turn law enforcement officers away from voting locations.

9.      The decision to turn uniformed law enforcement officers away from voting locations will necessarily be informed by the election official's personal views and background knowledge. An unfounded belief that uniformed law enforcement officers intimidate voters could prove sufficient to turn uniformed law enforcement officers away.

10.     I am aware of an incident in Durham, North Carolina where two sheriff's deputies were turned away from voting location because of misplaced fears of voter intimidation. *See* Ex. 1, Leslie Moreno, *Two Durham Deputies Turned Away from Polling Location for Being in Uniform*, WRAL (Oct. 22, 2020), https://www.wral.com/two-durham-deputies-turned-away-from-polling-location-for-being-in-uniform/19349327/.

11.     I am also aware that neighboring New Mexico's Secretary of State has guidance on voter intimidation stating "[u]uniformed police officers, and poll watchers wearing official-seeming

clothing in polling places has been found to intimidate voters." *See* Ex. 2, New Mexico Secretary of State, *Guidance on Voter Intimidation and Discriminatory Conduct*, https://www.sos.nm.gov/voting-and-elections/voter-information-portal-nmvote-org/guidance-on-voter-intimidation-and-discriminatory-conduct/.

12.    The North Carolina incident and the New Mexico Secretary of State's guidance on voter intimidation provide concrete examples of a misguided belief that uniformed law enforcement officers are in some way intimidating and could lead to law enforcement officers being turned away from voting locations. This is, on its face, absurd. Sociological studies going back decades have shown that people, especially poor and minority individuals, are reassured by the presence of uniformed personnel. Off-duty officers routinely work jobs wherever security is needed throughout this nation and only in the fantasies of activists might this be seen as creating some kind of intimidation issue.

13.    Simply put, officers routinely vote in uniforms on voting day as shift work disregards dates such as Christmas, New Year's Day, and Voting Day. To disenfranchise officers, deputies, and possibly firefighters due to their uniforms is an obvious attempt at voter suppression.

14.    Many officers may also choose to wear their uniforms as a matter of convenience to avoid the burden of having to change their clothes to vote.

15.    Busy officers in uniform or those who faced heightened dangers on election day such as participating in car chases, experiencing gun, knife, or other violence, or even simply by having to respond to acrimonious domestic disputes, who are turned away at the polls, may simply leave the polls and opt not to return to vote in time after changing out of their uniform—an event that usually marks the end of their day discharging their especially stressful civic duties.

16.    Finally, I am aware of academic work that finds "[p]olice skew more Republican than their jurisdictions, with notable exceptions." Ex. 3, Jonathan Mummolo, *Political Diversity in U.S. Police Agencies*, Stanford American Politics Workshop (Apr. 2, 2024), https://politicalscience.stanford.edu/events/political-diversity-us-police-agencies.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of May 2026.

By: /s/ Dave Smith
Dave Smith
Retired Lieutenant
Arizona Department of Public Safety